[Cite as *State v. Earley*, **2020-Ohio-4548**.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MIKAALAI EARLEY, | : | Case No. 2019CA00169 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Canton Municipal
Court, Case No. 2019CRB3110

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      September 21, 2020

APPEARANCES:

For Plaintiff-Appellee

KRISTEN BATES AYLWARD
Canton Law Director

JASON P. REESE
Canton City Prosecutor

KATIE ERCHICK GILBERT
Deputy Chief Counsel
218 Cleveland Ave. S.W.
P.O. Box 24218
Canton, Ohio 44701-4218

For Defendant-Appellant

AARON KOVALCHIK
116 Cleveland Ave. North
Canton, Ohio 44702

*Baldwin, J.*

{¶1}  Defendant-appellant Mikaalai Earley appeals her conviction from the Canton Municipal Court on one count of abandoning animals. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}  On June 21, 2019, a complaint was filed charging appellant with one count of abandoning animals in violation of R.C. 959.01, a misdemeanor of the second degree. A jury trial commenced on October 2, 2019. The following testimony was adduced at trial.

{¶3}  Deputy Phil Sedlacko of the Sheriff's Department Dog Warden Division testified that a two year old husky named King/Kody was brought to the Dog Warden's Department by the Canton Police Department on or about June 5, 2019. The microchip in the dog indicated that appellant was the owner of the dog. Deputy Sedlacko testified that "we had had that dog in our facility before, so we kind of had some history on it." Transcript at 69. Deputy Sedlacko assumed that the dog had been caught running at large and picked up on the road before.

{¶4}  The Deputy testified that he spoke with appellant on June 6, 2019 and told her that they had her dog. Appellant at that time did not know that they had her dog. Appellant told him that her son was going to come and pick up the dog.  Appellant's son never came to pick up the dog. On June 13, 2019, the Deputy called and left a message with appellant's son advising him that appellant needed to come and get the dog or abandonment charges would be filed against appellant.  Deputy Sedlacko testified from June 5, 2019 to June 13th or 14th of 2019, no one came to pick up the dog. He testified that on June 13, 2019, he was ordered to file abandonment charges against appellant.

{¶5}   On cross-examination, Deputy Sedlacko testified that he was unaware that Kody/ King had an owner prior to appellant. The dog was later adopted out.

{¶6}   Deputy John Barber of the Dog Warden's Division of the Stark County Sheriff's Department testified that he spoke with appellant over the phone after the dog had been there for a week or so and told appellant that she needed to pick up the dog. Appellant had told him that her son was going to retrieve the dog and that she had provided money to her son to do so. He testified that no one came to retrieve the dog. He testified that appellant had reclaimed the dog from the dog pound on previous occasions including on April 29, 2019. After appellant failed to reclaim the dog this time, his office decided to file a charge against appellant. A charge was filed on June 21, 2019. The dog was adopted out on August 14, 2019. Deputy Barber testified that appellant never told him that she did not want the dog anymore or that she could not afford the dog.

{¶7}   Major C.J. Stantz of the Stark County Sheriff's Office testified that he oversees the Dog Warden Division. He testified that he spoke with appellant on June 14, 2019 and again advised her that she needed to come and pick up her dog and that he was giving her three more days, until June 17, 2019, to do so before the Prosecutor's Office was contacted and a warrant filed.   According to him, appellant indicated that she had better things to do. On June 21, 2019, one of his officers got a warrant for appellant's arrest for abandoning the dog at their facility. He testified that appellant did not retrieve the dog from the dog pound.

{¶8}   Prior to appellant taking the stand on her own behalf, the trial court ruled that appellant could not testify in the presence of the jury that shots were filed at her residence  because  there  was  no  record  of  this  incident  with  the  Canton  Police

Department. Appellant had sought to testify that the reason she did not immediately respond to the officer's request to pick up the dog was because she moved out of the area because of the shooting. Prior to the start of trial, Sergeant Prince of the Canton Police Department had indicated to the State that there were no shots fired during the time frame appellant alleged.

**{¶9}** However, appellant was permitted to proffer certain testimony outside the presence of the jury for the purposes of maintaining the record. Appellant testified that on June 13, 2019, her daughter called her and told her that three or four shots were filed at their residence and that appellant's son was the target. She testified that the shooting was gang related. Appellant testified as a part of the proffer that she immediately drove home from Columbus and picked up a U-Haul the next morning with the intention of moving out of the area.  She also testified that she told Major Stantz that she did not have time to pick up the dog because she was trying to move her son out of the neighborhood and that she then hung up because it was not her priority.  She testified that she chose her son over the dog, that she did not report the shooting to the police and that no one came to her house in response to the shooting. Appellant did not call 911 and admitted that there was no record that the shooting happened.  Appellant admitted that while the shooting allegedly happened on June 13, 2019, she had talked to the officer seven days before about the dog. She stated that she had no intention of getting the dog because she did not live here. On redirect outside the presence of the jury, appellant testified that her daughter was a witness to the shooting and that her daughter said that the police were driving up and down the street, but that she told her daughter not to go outside. She testified that she had no doubt that a shooting happened that night. On recross, appellant

testified that she was not surprised that no calls were made around her house on the day of the alleged shooting. Further, she did not know whether the shotspotter was activated that day. A shotspotter is activated when gunshots are fired.

**{¶10}** Appellant then testified in the presence of the jury. She testified that she had a conversation with Deputy Barber when they adopted the dog and that while the dog was her son's, the dog was adopted in appellant's name because she had a driver's license and her son did not have ID. She testified that after the dog ran off, she was contacted and told that she needed to come down and get the dog back but told them that she lived in Columbus where she also had a home so could not. Appellant testified that she was told that she had to come with her son to pick up the dog. Appellant testified that the dog had four previous owners and had escaped from her house at least once right after they got him in March by opening the door. She testified that the dog knew how to unlock his cage. She testified that the dog was picked up by the Dog Warden from their backyard. Appellant also testified that on June 14, 4019, she spoke on the phone with Major Stantz and told him that she "had something else that I needed to deal with, and I did not have time to deal with the dog situation at that time." Transcript at 145. She testified that she was in the process of moving and had rented a U-Hail that morning. When asked why she was moving, she testified that she was moving because she was fearful and needed to move her kids out of the house to a new neighborhood. On cross-examination, appellant testified that the dog was registered to her and that once she heard that the dog was missing, she sent money to her son to retrieve the dog, but that her son was told that he could not come alone and get the dog because the officers thought that her son was under eighteen. She admitted that she did not get the dog herself because

she had to work and that no one ever came to get the dog. Appellant admitted that her son went to the Dog Warden's Office on June 5, 2019 and that she was moving on June 14, 2019 and that between the two dates, she never went to get Kody/King. Appellant also testified that she told the officers that her son was going to come and get the dog, but when her son went to the Dog Warden's Office, they did not give him the dog because he did not have enough money. Appellant admitted that she was not going to get the dog herself.

{¶11} On redirect, appellant testified that she was working in Columbus and that this prevented her from coming back to Canton. She testified that she considered it her son's responsibility to come up with the money to retrieve the dog because she considered the dog to be his dog. She testified on recross that her son had issues that prevented him from getting an ID and that was why the dog was in her name.

{¶12} The last witness to testify was Jasmine Martin, appellant's daughter. Martin testified that Kody/King ran away more than a few times and that on June 4th or 5th of 2019, she saw the police removing Kody/King from appellant's property. Martin testified that she tried to yell out to the police that Kody/King was their family dog, but they did not hear her.

{¶13} At the conclusion of the evidence and the end of deliberations, the jury, on October 2, 2019, found appellant guilty of abandoning animals. Appellant was sentenced to serve one day in jail and was given credit to time served and was ordered to complete 100 hours of community service, Appellant was also ordered to pay a $50.00 fine and to make restitution to the Stark County Sherriff's Office Dog Warden Division.

{¶14} Appellant now appeals, raising the following assignments of error on appeal:

{¶15} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶16} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT PERMIT APPELLANT TO TESTIFY AS TO HER VERSION OF THE FACTS."

I

{¶17} Appellant, in her first assignment of error, argues that her conviction for abandoning animals is against the manifest weight and sufficiency of the evidence. We disagree.

{¶18} Sufficiency of evidence and manifest weight of the evidence are separate and distinct legal standards. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997–Ohio–52, 678 N.E.2d 541. Sufficiency of the evidence is a test of adequacy. *Id.* A sufficiency of the evidence standard requires the appellate court to examine the evidence in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶19} In contrast to the sufficiency of the evidence analysis, when reviewing a weight of the evidence argument, the appellate court reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered. *State v. Thompkins,* supra at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶20}** Under a weight of the evidence argument, the appellate court will consider the same evidence as when analyzing the appellant's sufficiency of evidence argument. Appellant argues there was insufficient evidence to convict appellant, and the trial court clearly lost its way as its conviction of appellant based on the total weight of the evidence caused a manifest miscarriage of justice.

**{¶21}** Appellant, in the case sub judice, was convicted of violating R.C. 959.01 which states that "No owner or keeper of a dog, cat, or other domestic animal, shall abandon such animal." Abandonment will not be presumed but requires affirmative proof of a person's intent to totally discard the property. *Kiser v. Board of Commrs*, 85 Ohio St. 129, 97 N.E. 52, 97 N.E.2d 52 (1911); *Accord, State v. Amos,* 5th Dist. Ashland No. 14–COA–01, 2014–Ohio–3097, 17 N.E.3d 9, ¶ 21.

**{¶22}** Appellant argues that appellee failed to prove beyond a reasonable doubt that she intended to totally abandon Kody/King. There was testimony that appellant was notified by the Dog Warden that they had her dog on June 6, 2019, which was a week before the alleged shooting, and that charges were not filed against her until June 21, 2019. Appellant was advised during this time that she needed to pick up her dog or face charges. Appellant, however, did not pick up her dog and never indicated that she needed additional time to pick up her dog. Appellant's dog remained unclaimed for 17 days until the warrant was filed.

{¶23} We find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found appellant guilty of abandoning the dog. We further find that the jury did not lose its way in convicting appellant.

{¶24} Appellant's first assignment of error is, therefore, overruled.

II

{¶25} Appellant, in her second assignment of error, argues that the trial court abused its discretion when it prohibited her from testifying in the presence of the jury about unverified gunshots fired into her home.

{¶26} Prior to the commencement of trial, the trial court ordered that appellant could not testify in the presence of the jury that she moved out of the area and did not immediately respond to the officer's request to pick up the dog because of the shooting. The trial court prohibited appellant from so testifying because there was no record of the shooting. The trial court stated, in relevant part, as follows: "I'm concerned about the truthfulness. There's got—any normal person—if my son or daughter gets shot at, there's a record of it. If there's no record it's not coming in. It's too easy to make up. It's too easy." Transcript at 8.

{¶27} The trial court later indicated that appellant "can testify that she didn't feel safe in the neighborhood and she wanted to leave. I just didn't want anything to do with gunshots and things of that nature coming up, when there's no record of it." Transcript at 47. Appellant made a proffer outside the presence of the jury about the gunshots and, in the presence of the jury, testified that she was moving because she was fearful.

{¶28} An abuse of discretion is more than an error law or judgment. Rather, the term implies that the trial court's attitude in reaching its decision was unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶29} We find that the trial court's decision was not arbitrary, unconscionable or unreasonable. The trial court had been informed that there was no report made of the alleged gunshots, but did permit appellant to testify that she was moving because she was fearful. Moreover, assuming, arguendo, that the trial court erred in not permitting appellant to testify about the shooting, we find any error was harmless. There was overwhelming evidence, as set forth above, of appellant's guilt. While the alleged gunshots occurred on June 13, 2019, appellant did not pick up the dog despite being advised on June 6, 2019, a week before,   that she needed to pick up the dog. Appellant was advised more than once that if she did not do so, charges would be filed against her.

{¶30} Appellant's second assignment of error, is, therefore, overruled.

{¶31} Accordingly, the judgment of the Canton Municipal Court is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.